JS 44   (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

Sherry Johnson as Administratrix of the Estate of Kyree Arnold Johnson

**DEFENDANTS**

City of Philadelphia, Police Officer Andrew Walls

**(b)** County of Residence of First Listed Plaintiff   Philadelphia
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Philadelphia
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Stewart Eisenberg, Spruce Street, Philadelphia, PA 19138
215 546 6636

Attorneys (If Known)

John J. Coyle, Esquire
1515 Arch Street, 14th Floor, Phila. PA 19102

**II. BASIS OF JURISDICTION**   (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** — ☐ 310 Airplane; ☐ 315 Airplane Product Liability; ☐ 320 Assault, Libel & Slander; ☐ 330 Federal Employers' Liability; ☐ 340 Marine; ☐ 345 Marine Product Liability; ☐ 350 Motor Vehicle; ☐ 355 Motor Vehicle Product Liability; ☐ 360 Other Personal Injury | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | **PERSONAL INJURY** — ☐ 362 Personal Injury - Med. Malpractice; ☐ 365 Personal Injury - Product Liability; ☐ 368 Asbestos Personal Injury Product Liability | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | **PERSONAL PROPERTY** — ☐ 370 Other Fraud; ☐ 371 Truth in Lending; ☐ 380 Other Personal Property Damage; ☐ 385 Property Damage Product Liability | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | **PRISONER PETITIONS** — ☐ 510 Motions to Vacate Sentence; **Habeas Corpus:** ☐ 530 General; ☐ 535 Death Penalty; ☐ 540 Mandamus & Other; ☐ 550 Civil Rights; ☐ 555 Prison Condition | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | **IMMIGRATION** — ☐ 462 Naturalization Application; ☐ 463 Habeas Corpus - Alien Detainee; ☐ 465 Other Immigration Actions | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | | | ☐ 950 Constitutionality of State Statutes |
| | ☒ 440 Other Civil Rights | | | |

**V. ORIGIN** (Place an "X" in One Box Only)

- ☐ 1 Original Proceeding
- ☒ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C. §1983

Brief description of cause:
Plaintiff alleges violation of their civil rights under 42 U.S.C. § 1683

**VII. REQUESTED IN COMPLAINT:**

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

**VIII. RELATED CASE(S) IF ANY**

(See instructions):  JUDGE _____  DOCKET NUMBER _____

DATE   2/10/16

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **Sherry Johnson, Individually and as** : <br> **Adminsitratrix of the Estate of Kyree Arnold** : <br> Johnson, Deceased : <br> 612 East Johnson Street : <br> Philadelphia, PA 19138 : <br>         Plaintiff : <br> : <br>     vs, : <br> : <br> **City of Philadelphia** : <br> 1515 Arch Street : <br> Philadelphia, PA 19102 : <br>       and : <br> **Andrew Walls** : <br> Individually and in his Official Capacity as a City of: <br> Philadelphia Police Officer : <br> 1515 Arch Street : <br> Philadelphia, PA 19102 : <br>       Defendant : <br> : | COURT OF COMMON PLEAS <br> PHILADELPHIA COUNTY <br><br> APRIL TERM, 2015 <br><br><br><br> JURY TRIAL DEMANDED <br><br> No.: 02010 |

## NOTICE OF REMOVAL

**To the Honorable Judges of the United States District Court for the Eastern District of Pennsylvania.**

Pursuant to 28 U.S.C. § 1441, defendants, Police Officer Andrew Walls, and the City of Philadelphia, (hereinafter "petitioners") through their counsel, John Coyle, Deputy City Solicitor, respectfully petition for the removal of this action to the United States District Court for the Eastern District of Pennsylvania. In support thereof, defendants state the following:

1.    In April 2015, plaintiff initiated this action by a Complaint in the Court of Common Pleas in Philadelphia, April Term 2015, No. 2010. (Exhibit A - Complaint).

2. By way of this Removal defendants have agreed to accept service.

3. Plaintiff alleges that on May 29, 2013 sustained damages when their civil rights were violated by the defendants. (Exhibit A ).

4. This action may be removed to this Court pursuant to 28 U.S.C. § 1441 since Plaintiff's Complaint contains allegations of violations of the plaintiff's Federal Civil Rights and seeks relief under 42 U.S.C. § 1983. (Exhibit A)

**Wherefore,** petitioners, Police Officer Andrew Walls, and City of Philadelphia, respectfully request that the captioned Complaint be removed to the United States District Court for the Eastern District of Pennsylvania.

Respectfully submitted,

Craig M. Straw
Chief Deputy City Solicitor

JOHN J. COYLE
Deputy City Solicitor
Attorney I.D. No. 312084
1515 Arch Street, 14th Floor
Philadelphia, PA  19102
215-683-5447

Date: 2/10/16

## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **Sherry Johnson, Individually and as** : | |
| **Adminsitratrix of the Estate of Kyree Arnold** : | |
| Johnson, Deceased : | COURT OF COMMON PLEAS |
| 612 East Johnson Street : | PHILADELPHIA COUNTY |
| Philadelphia, PA 19138 : | |
| Plaintiff : | APRIL TERM, 2015 |
| : | |
| vs, : | |
| : | |
| **City of Philadelphia** : | JURY TRIAL DEMANDED |
| 1515 Arch Street : | |
| Philadelphia, PA 19102 : | No.: 02010 |
| and : | |
| **Andrew Walls** : | |
| Individually and in his Official Capacity as a City of : | |
| Philadelphia Police Officer : | |
| 1515 Arch Street : | |
| Philadelphia, PA 19102 : | |
| Defendant : | |
| : | |

## NOTICE OF FILING OF REMOVAL

TO:    Stewart J. Eisenberger, Esquire
       1634 Spruce Street
       Philadelphia, PA 19103

PLEASE TAKE NOTICE THAT on February 16, 2016, defendants, Police Officer Andrew Walls, and City of Philadelphia filed, in the office of the Clerk of the United States District Court for the Eastern District of Pennsylvania a verified Notice of Removal.

A copy of this Notice of Removal is attached hereto and is also being filed with the Clerk of the Court of Common Pleas of Philadelphia County, pursuant to Title 28, United States Code, Section 1446(e).

JOHN J. COYLE
Deputy City Solicitor
Attorney I.D. No. 312084
City of Philadelphia Law Department

1515 Arch Street, 14th Floor
Philadelphia, PA  19102
 215-683-5447

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **Sherry Johnson, Individually and as** **Adminsitratrix of the Estate of Kyree Arnold** Johnson, Deceased 612 East Johnson Street Philadelphia, PA 19138 :::::: Plaintiff | COURT OF COMMON PLEAS PHILADELPHIA COUNTY APRIL TERM, 2015 |

Sherry Johnson, Individually and as
Adminsitratrix of the Estate of Kyree Arnold
Johnson, Deceased
612 East Johnson Street
Philadelphia, PA 19138
                              Plaintiff

                              :
                              :
                              :
                              :
                              :
                              :

COURT OF COMMON PLEAS
PHILADELPHIA COUNTY

APRIL TERM, 2015

vs,                           :

City of Philadelphia          :          JURY TRIAL DEMANDED
1515 Arch Street              :
Philadelphia, PA 19102        :          No.: 02010
                    and       :
Andrew Walls                  :
Individually and in his Official Capacity as a City of:
Philadelphia Police Officer   :
1515 Arch Street              :
Philadelphia, PA 19102        :
                              Defendant  :
                              :

## CERTIFICATE OF SERVICE

I, JOHN J. COYLE, Deputy City Solicitor, do hereby certify that a true and correct copy of the attached Notice of Removal has been served upon the following by First Class Mail, postpaid, on the date indicated below:

TO:    Stewart J. Eisenberger, Esquire
       1634 Spruce Street
       Philadelphia, PA 19103

                              **JOHN J. COYLE**
                              **Deputy City Solicitor**
                              **Attorney ID No. 312084**
                              City of Philadelphia Law Department

1515 Arch Street, 14th Floor
Philadelphia, PA  19102
215-683-5447

Date: 2/16/16

Exhibit "A"

04/6028
J. Coyle

**THIS IS NOT AN ARBITRATION MATTER.  JURY TRIAL DEMANDED**

**EISENBERG, ROTHWEILER, WINKLER, EISENBERG & JECK, P.C.**
By:    Stewart J. Eisenberg, Esquire
        Todd A. Schoenhaus, Esquire
Attorney I.D. No.: 32151/79716
1634 Spruce Street
Philadelphia, PA 19103
215-546-6636

Filed and Attested by the
Office of Judicial Records
27 JAN 2016 02:42 pm
P. MARTIN

Attorneys for Plaintiff

**Sherry Johnson, Individually and as Administratrix of the Estate of Kyree Arnold Johnson, Deceased**
612 East Johnson Street
Philadelphia, PA 19138

                                   Plaintiff

                vs.

**City of Philadelphia**
1515 Arch Street
Philadelphia, PA 19102
                and
**Andrew Walls**         Bdg #5424 Dist #12.
Individually and in his Official Capacity as a City of
Philadelphia Police Officer
1515 Arch Street
Philadelphia, PA 19102

                                   Defendants

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

COURT OF COMMON PLEAS
PHILADELPHIA COUNTY

APRIL TERM, 2015

JURY TRIAL DEMANDED

NO.: 02010

Case ID: 150402010



## NOTICE TO DEFEND

NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

Lawyer Referral Service
Philadelphia Bar Association
1101 Market Street, 11th Floor
Philadelphia, PA 19107
(215) 238-6338

ADVISO

Le han demandado a used en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte pueda decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE, SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

Lawyer Referral Service
Philadelphia Bar Association
1101 Market Street, 11th Floor
Philadelphia, PA 19107
(215) 238-6338

## CIVIL ACTION – COMPLAINT
## 2B – ASSAULT AND BATTERY

## THE PARTIES

1. Plaintiff, Sherry Johnson, is an adult individual residing at 612 E. Johnson Street, Philadelphia, Pennsylvania 19138.

2. On October 4, 2013, Plaintiff was granted Letters of Administration by the Register of Wills Office of Philadelphia County, Pennsylvania to act as the Administratrix of the Estate of Kyree Arnold Johnson, her deceased son ("Plaintiff-decedent").

3. Plaintiff-decedent was born on November 18, 1990 and died on May 29, 2013, survived by Plaintiff, his father William Jeffries, and his minor son Tyhir Johnson. At the time of his death, Plaintiff-decedent and his son resided with Plaintiff at the above address.

2

Case ID: 150402010

4.      Defendant City of Philadelphia ("the City") is a municipality of the Commonwealth of Pennsylvania with a principle place of business located at 1515 Arch Street, Philadelphia, Pennsylvania  19102.

5.      Defendant Andrew Walls ("Officer Walls") was, at all relevant times, a police officer with the City of Philadelphia Police Department, acting under the color of law and within the course and scope of his employment with the City.

6.      At all relevant times, the City of Philadelphia owned, operated, directed, and/or controlled the Philadelphia Police Department and its agents, employees, members, and officers, including Officer Walls, such that the City of Philadelphia is liable for their actions and/or inactions.

## FACTUAL BACKGROUND

7.      On July 9, 1868, the Fourteenth Amendment to the United States Constitution was adopted.

8.      The Fourteenth Amendment provides, *inter alia*, that:

No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws.

9.      Despite the guarantees afforded by these core principles, the City of Philadelphia has a long history of a custom of using deadly and excessive force by its Police Department in a manner that violates the civil rights of its citizens.

10.     The failure of the City of Philadelphia, its Police Department, and/or Officer Walls to take the necessary steps to address this deadly pattern led to Plaintiff-decedent's tragic death when deadly excessive force was used against him while he lay helpless on the street.

3

Case ID: 150402010

## THE UNITED STATES DEPARTMENT OF JUSTICE IDENTIFIED PROBLEMS WITH THE PHILADELPHIA POLICE DEPARTMENT DECADES AGO

11.    Statistical analysis from the 1960s reveals that Philadelphia ranked among one of the cities with the lowest rate of justifiable police homicides. [*A Community Concern: Police Use of Deadly Force*, U.S. Department of Justice and the National Criminal Justice Reference Service, January 1979, pp. 90-92].

12.    During the early 1970s, Philadelphia ranked highly among U.S. cities with the highest rate of police deaths resulting from police action.

13.    In 1975, the Public Interest Law Center of Philadelphia ("PILCOP") issued a study on the use of firearms by Philadelphia police from 1970-1974. Key findings included:

a.    The **use of fatal force was worsening** over the time period with the **incident rate almost doubling;**

b.    Approximately **one-third of the victims were killed;**

c.    Almost **15% of the victims committed no crime;**

d.    Only 3.5% of all cases were ever subjected to review, and when a review board was convened, the officers were vindicated in every circumstance; and

e.    **The statistics called for condemnation of the City of Philadelphia's Police Department for failing to discipline officers who misused firearms.**

(emphasis added).

14.    Among the conclusions in the Department of Justice report was that the Philadelphia Police Department needed restrictive policies pertaining to the use of deadly force accompanied by strong enforcement to reduce the incidence of police shootings.

4

15.     Unfortunately, these recommendations directed at protecting citizens' civil rights were never implemented in a meaningful form or manner to curb the pattern of misuse of deadly force.

## PHILADELPHIA POLICE COMMISSIONER KEVIN TUCKER'S STUDY TASK FORCE IDENTIFIED DISTURBING PROBLEMS WITH THE PHILADELPHIA POLICE DEPARTMENT IN THE 1980s

16.     In May of 1986, then Police Commissioner Kevin Tucker convened the Philadelphia Police Study Task Force comprised of civic leaders and policing experts to review all aspects of the Philadelphia Police Department and to make recommendations about the necessary changes.

17.     On March 2, 1987, the Task Force issued its report entitled *"Philadelphia and Its Police: Toward a New Partnership"*.

18.     While recognizing some of the positive aspects of the Philadelphia Police Department, the Task Force concluded that, "the Department appears unfocused, unmanaged, **under-trained**, under-equipped, and unaccountable. **There is little sense that it is aggressively pursuing a coherent and successful overall strategy.**" (emphasis added).

19.     Among the Task Force's many concerns was the fact that the system of accountability was left up to the Police Department itself with little to no outside entity influence to hold the Police Department accountable for the full and impartial enforcement of the law.

20.     After conducting a comprehensive evaluation, including the policies and procedures surrounding the use of excessive force, the Task force recommended that, *inter alia,*:

a.     The City of Philadelphia Police Department continuously review its rules on the use of force to make sure that they comply with the governing law and that the force should be used only as a last resort; and

Case ID: 150402010

b.   The City of Philadelphia Police Department should develop new rules to make clear that all citizens are treated with equal respect and civility.

21.   Despite the drastic nature of the revelations in the report, the City of Philadelphia Police Department continued to foster an environment where citizens' civil rights were violated through its policies and customs of inadequate training, inadequate implementation and enforcement of policies and procedures, and inadequate accountability measures and discrimination on many levels.

22.   As a result, multiple civic organizations joined forces and presented the City of Philadelphia, including its Police Department, with a comprehensive Civil Action Complaint aimed at addressing many of the discriminatory and constitutionally abhorrent policies and customs of the Police Department.

### THE CITY OF PHILADELPHIA'S CHANCE TO ADDRESS INCREASING VIOLATIONS OF CIVIL RIGHTS: NAACP, PHILADELPHIA BRANCH, ET AL. V. CITY OF PHILADELPHIA

23.   In response to the aforementioned Civil Action Complaint, ultimately, in September 1996, the United States District Court for the Eastern District of Pennsylvania approved a Settlement and Monitoring Agreement focused on identifying and eradicating the policies and customs of the Philadelphia Police Department that resulted in perpetual violations of Philadelphians' Civil Rights. [*NAACP, Philadelphia Branch, et al. v. City of Philadelphia,* U.S.D.C.-E.D.Pa. No.: 96-6045].

24.   The Settlement and Monitoring Agreement was intended to address problems of corruption and misconduct throughout the City of Philadelphia Police Department that endangered the citizens of the City of Philadelphia.

6

25.    Although the City of Philadelphia denied allegations of systemic corruption and that the Department was ineffective at policing itself, the City and its Police Department were placed on notice, again, of systemic violations of citizens' civil rights.

26.    One of the reform measures included the establishment of an independent commission to study police corruption and misconduct in the City of Philadelphia.

27.    To assist in meeting this goal, the Police Department created the Integrity and Accountability Office ["IAO"].

28.    Concurrently, the Police Department agreed to enhance its disciplinary regulations for violations of the use of force directives and regulations in an effort to provide an incentive for officers to comply with Constitutional obligations.

## THE INTEGRITY AND ACCOUNTABILITY OFFICE ISSUES ITS FIRST REPORT IN 1997

29.    In September 1997, the First Monitoring Report was filed with the Court, acknowledging some initial steps undertaken by the Police Department including the promulgation of a Use of Force Reporting Policy and stricter supervision of narcotics officers.

30.    Concern remained regarding the "Code of Silence" that permeates the Police Department.

31.    Recommendations were made for serious investigations into even a hint of a cover-up coupled with swift, sure and severe punishment.

32.    These measures necessary to protect civil rights were never fully, properly and effectively implemented.

Case ID: 150402010

## THE INTEGRITY AND ACCOUNTABILITY OFFICE ISSUES ITS THIRD REPORT IN 1999

33.   In July 1999, the IAO issued its Third Report, cautioning that the Police Department lacks reliable and effective systems such that the Police Department cannot assess when, why and how police officers were using force.

34.   The IAO noted that, in 1994, the Police Department implemented a use of force database.

35.   The IAO found that limited protocols and policies were in place to ensure the integrity, quality and comprehensiveness of the use of force data collected and actually entered into the database.

36.   The IAO found also that accountability, which would otherwise serve as a deterrent, was severely compromised by the lack of a departmental Disciplinary Code provision addressing the inappropriate use of force.

37.   The IOA found numerous other inadequacies in the investigation and disciplinary process including incomplete investigations, "not guilty" determinations without supporting reasons or justifications, and a lack of a tracking mechanism to ensure compliance with investigator's recommendations.

38.   Equally disturbing is that the IAO found that the department lacked practical hands-on training in "use of force" techniques.

39.   These findings again placed the City and its Police Department leaders on notice of the policies and customs that endangers citizens' civil rights.

8

Case ID: 150402010

## THE INTEGRITY AND ACCOUNTABILITY OFFICE
## ISSUES ITS REPORT ON THE DISCIPLINARY SYSTEM IN 2001

40.    In 2001, both the IAO and Mayor John Street's Task Force on Police Discipline issued comprehensive reports on the City of Philadelphia Police Department's disciplinary system.

41.    "Both studies cited serious shortcomings in the Department's disciplinary practices and procedures that comprised the overall integrity of the force." [Integrity and Accountability Officer report on the Disciplinary System, December 2003].

42.    In 2003, the IAO reviewed these two prior studies to see what, if anything, the City of Philadelphia did in response to the two prior reports.

43.    In 2003, the IAO concluded that the "disciplinary system in the Philadelphia Police Department remains fundamentally ineffective, inadequate, and unpredictable" and reported to the City of Philadelphia that:

a.    In the two and one-half years that have elapsed since the first IAO investigation, and the Task Force report, the only recommendations that have been adopted are those dealing with the information and tracking system related to the disciplinary process.

b.    Minimal effort has been made to implement the more substantive recommendations focusing on the actual imposition of discipline. No meaningful attempt has been made to eliminate the possibility for manipulating the outdated and ineffective Disciplinary Code, to expedite the disciplinary process to enforce appropriate and consistent penalties, or to increase the overall professionalism of the operations and resources of the Police Board of Inquiry.

9

Case ID: 150402010

c.    "The Department lacks uniform and rational standards for assessing penalties and therefore penalties are imposed in a haphazard and inscrutable manner. The disciplinary system is neither transparent nor accountable."

d.    "Excessive and unexplained delays in resolving disciplinary actions are commonplace."

e.    Since 2000, close to one-half of officers, supervisors and commanders who were found by the IAB to have violated Departmental policies or engaged in serious misconduct were never disciplined.

44.    The IOA warned the City of Philadelphia that the "harms resulting from this dysfunctional system to the integrity and effectiveness of the Department, and on the confidence of the citizens served by the Department, while unquantifiable, are profoundly significant."

45.    Reviewing the conditions that have been allowed to continue through present time and led to the death of Plaintiff-decedent, the IAO warned City leaders that '[u]nfortunately, the conditions necessary for meaningful and lasting reforms do not exist in the Department."

46.    Citing the changing predilections and politics of those occupying top leadership positions in the Police Department and the City coupled with an inherent fraternity among those enforcing discipline and those needing to be disciplined, the City of Philadelphia maintains a failed system that requires drastic change.

47.    As a result, the IAO declared that:

The conclusions of the earlier IAO report and the Mayor's Task Force have proven to be absolutely correct. Simply changing the individuals involved in the disciplinary process will not cure the problems.

For all these reasons, the IAO does not believe that the disciplinary system will ever be adequately reformed as long as it remains solely within the prerogative of the Police Department.

10

Therefore, to ensure the enforcement of a code of conduct that guarantees the integrity of its police force to the greatest extent possible, and to restore and maintain the trust and confidence of dedicated and law-abiding officers, as well as the citizens of Philadelphia, the IAO recommends that an entity, independent of the Philadelphia Police Department, be established and empowered to review disciplinary matters, determine penalties, and enforce disciplinary system guidelines.

## THE INTEGRITY AND ACCOUNTABILITY OFFICE ISSUES ITS REPORT ON THE USE OF DEADLY FORCE IN 2004

48. On the heels of the IAO's report on the inadequacies and dangers of an ineffective disciplinary system, the IAO revisited patterns, problems and dangers associated with the customs surrounding the use of deadly force by the Police Department. [Integrity and Accountability Office Report on the Use of Deadly Force, January 2004].

49. In recognition of the awesome power associated with the use of deadly force, the IAO begins its report by acknowledging that, "[t]he governmentally sanctioned authority allowing a person to use deadly force against another human being is the most profound power conferred upon any individual by any government."

50. Acknowledging the fundamental concerns embedded in our Constitution, the IAO declares that the "consequences of police use of deadly force far exceed the potential for loss of a single life. The use of unauthorized deadly force grossly violates the public trust in the function of police officers, and places officers and the City at risk in subsequent civil or criminal proceedings."

51. The purpose of the 2004 IAO report was "to assess whether the use of deadly force by Philadelphia police officers is governed, in all respects, by the highest standards and to ensure that the PPD meets its responsibilities and obligations as it relates to deadly force."

52. Explaining further, the IAO clarifies that, **"the primary goal of this report is to assess whether the PPD has effective and meaningful policies and practices in place to**

11

insure that deadly force is only used as authorized by law and policy and that when it is not, the PPD takes all reasonable and necessary measures to address these problematic shootings."

53.    In evaluating trends, the IAO notes that, from the beginning of 2003 until issuance of the report, there was a dramatic increase in the number of civilians killed by police shootings.

54.    While finding that, on its face, the Philadelphia Police Department's written policy regarding the use of deadly force, set forth in "Directive 10", is in compliance with state, federal and Constitutional standards, the IAO found that there were significant deficiencies in the investigations into these incidents coupled with Departmental violations and known use of questionable tactics and judgment being utilized by some Philadelphia police officers which all increase the likelihood of and precipitating the need for use of deadly force where no crime had been committed.

55.    The IAO found also that the Philadelphia Police Department's in-service firearms training does not adequately prepare officers.

56.    Once again, the City of Philadelphia and its leaders were notified and reminded of the various policies and customs that yield an environment where civil rights are likely to be violated.

57.    In 2004, the *NAACP, Philadelphia Branch, et al. v. City of Philadelphia*, Order expired and the IAO has not produced any formal reports or recommendations since.

## POLICE INTEGRITY AND ACCOUNTABILITY IN PHILADLEPHIA: PREDICTING AND ASSESSING POLICE MISCONDUCT - 2004

58.    Through a collaboration between Temple University's Center for Public Policy and the Philadelphia Police Department, an information system was developed to assist the

12

police department's integrity oversight process. [Green, JR, Piquero AR, Hickman, M., Lawton, B., *Police Integrity and Accountability in Philadelphia: Predicting and Assessing Police Misconduct.* (December 2004)]. This system arose out of the City of Philadelphia's acknowledged need for the "development of baseline information regarding possible indicators of negative police behavior."

59.    The City of Philadelphia was aware of these problems since this collaborative process was guided by members from the police department's Internal Affairs Division, Labor Relations Unit, Fraternal Order of Police, Integrity and Accountability Office and others throughout the police force.

60.    Among the published findings from this collaboration, the City of Philadelphia knew and/or learned that:

a.    Frequent indicators of potentially negative conduct included prior departmental discipline followed by physical abuse complaints.

b.    There existed 12 background and academy characteristics that were significant predictors of whether an officer would become involved in a shooting incident (i.e. officers with family members in law enforcement, prior driver's license history, and private criminal history).

c.    The context of the different demographics and environments within each police district influences considerably the likelihood of misuse of force and shooting incidents.

d.    Attitudinal information revealed the district-wide attitudes that correlate with misconduct rates.

13

Case ID: 150402010

e.    Monitoring officers who fall into the high risk category for police shootings or assuring additional supervision in the early stages of their career may mitigate patterns of police shootings.

f.    Significant predictor variables for the likelihood of a police shooting are:

    i.   Non-white officers;

    ii.  The context of the different demographics and environments within each district influences considerably the likelihood of misuse of force and shooting incidents;

    iii.   Male officers;

    iv.  Officers under court order to pay judgments at the time of the shooting;

    v.   Former military service and disciplinary problems;

    vi.  Officers who had a parent employed as a law enforcement officer;

    vii. Officers who did not have a family member who was ever arrested; and

    viii. Officers whose Pennsylvania driver's license had ever been suspended or revoked and those who had received traffic tickets within the past 5 years.

## THE INTEGRITY AND ACCOUNTABILITY OFFICE ISSUES ITS REPORT ON "OFFICER-INVOLVED SHOOTINGS" IN 2005

61.    In February 2005, the IAO comprehensively studied shootings by Philadelphia police officers and, yet again, highlighted a "troubling trend that deserves close attention and monitoring."

62.    The IAO reported that, in the five-year period from 1998 to 2002, police killed 24 people, which represented a surge when compared to the prior time period.

14

63.     The IAO concluded that officers were utilizing "questionable tactics and judgment", which precipitated deadly force when other less dangerous responses were available, due to, *inter alia*, inadequate training.

64.     Further, the IAO determined that the Philadelphia Police Department's internal investigations into such shootings were one-sided, incomplete, and untimely.

## PHILADELPHIA POLICE DEPARTMENT PLAN FOR "PREVENTING CORRUPTION WITHIN OUR RANKS" – 2010

65.     In August 2010, driven by recent arrests of police officers for criminal misconduct, Police Commissioner Ramsey enacted a plan for "preventing corruption within our ranks", which purportedly addressed prevention (including training and education), intervention, and investigation.

66.     Commissioner Ramsey acknowledged that the plans "are by no means complete. This is just the beginning."

67.     The Plan reiterated the Philadelphia Police Department's mission to "enforce laws while **safeguarding the constitutional rights of all people**" (emphasis added).

## PHILLY.COM "EXCLUSIVE: SHOOTINGS BY PHILLY POLICE SOAR AS VIOLENT CRIME PLUMMETS" – MAY 14, 2013

68.     On May 14, 2013 – two weeks before Officer Walls unjustifiably killed Plaintiff-decedent as alleged below – Philly.com published a report titled "Exclusive: Shootings by Philly police soar as violent crime plummets."

69.     According to the report, in 2012, Philadelphia police fired 474 bullets at suspects and shot 52 suspects (killing 15), representing a 50% increase over 2011 and the highest level in a decade.

15

Case ID: 150402010

70.    Despite having one of the highest rates of police shootings in the nation (a problem going back decades), Police Commissioner Charles Ramsey reportedly saw no need, at that time, to reevaluate the use of deadly force.

71.    Further, it was reported that efforts to review these shootings by the Police Advisory Commission were repeatedly blocked by Internal Affairs, which refused to cooperate and provide investigators with necessary information to which they were entitled.

## U.S. DEPARTMENT OF JUSTICE PUBLISHES "AN ASSESSMENT OF DEADLY FORCE IN THE PHILADELPHIA POLICE DEPARTMENT" – MARCH 2015

72.    Shortly after the Philly.com exclusive, Commissioner Ramsey finally asked the DOJ to review the Philadelphia Police Department's use of deadly force, something that had already been done in other cities.

73.    Upon information and belief, Commissioner Ramsey made his request right around the time of fatal shooting at issue, which occurred on the same day as two other police shootings and in the same week as six other shootings, including three other fatalities.

74.    After conducting a year-long assessment, which included an analysis of police shootings from 2007 to 2013, the DOJ published its report in March of 2015.

75.    Notably, the DOJ assessment "uncovered policy, training, and operational deficiencies" and yielded 48 findings – the first of which was that "officers do not receive regular, consistent training on the department's deadly force policy".

76.    The DOJ made 91 recommendations for the Philadelphia Police Department to reform its deadly force practices and concluded:

> We found the PPD's policies to be in need of significant refinement. Officers need more less-lethal options. In addition, the department's use of force policies need to be more explicit and officers need more training on them. Regarding training, it is essential that the PPD establish a field training officer (FTO) program. We also found that much of the PPD's training on use of force concepts and tactics is too

16

infrequent, lacks the appropriate concepts, and, at times, lacks standards, which leaves officers inadequately prepared to make decisions in an increasingly complex environment. The PPD's investigations of deadly force incidents need to be completed in a more timely fashion. In particular, discharging officers should be interviewed within 72 hours of an incident. Furthermore, the scope of the investigation and reporting on the administrative side needs to be expanded to reflect the goals of the use of force review board. The PPD's review process needs to enable the department to hold officers accountable, learn from deadly force incidents, self-critique, and change as a result. Last, in an effort to maximize transparency, the PPD should request the independent investigation of unarmed officer-involved shooting (OIS) incidents from another capable and legitimate authority. The department also needs to improve its relations with the police advisory commission and be more forthcoming with deadly force investigative files and data.

## THE SHOOTING INCIDENT

77.    On the night of May 29, 2013, after having completed his day of work as a materials manager at Einstein Montgomery Hospital and spending time with his family at home, Plaintiff-decedent went out for a drive alone.

78.    Shortly after 10 p.m., he stopped in front of a Chinese takeout restaurant at 4527 Wayne Avenue and was still sitting in the driver's seat when, within a couple of minutes, two unidentified males unexpectedly hopped in the passenger side of the car and robbed or attempted to rob him.

79.    Moments thereafter, a police car driven by Officer Walls pulled behind Plaintiff-decedent's vehicle and stopped, upon information and belief, approximately fifteen feet away.

80.    Within seconds of the arrival of Officer Walls, the robbers exited the passenger side of Plaintiff-decedent's vehicle and began fleeing north on Wayne Avenue.

81.    Plaintiff-decedent exited his vehicle and began shooting at the fleeing felons with a 45 caliber handgun that he was licensed to carry.

17

Case ID: 150402010

82.     Officer Walls immediately exited his police vehicle and began shooting Plaintiff-decedent from behind without, upon information and belief, identifying himself or ordering Plaintiff-decedent to drop his gun.

83.     Officer Walls shot Plaintiff-decedent at least five (5) times, causing him to helplessly fall to the ground.

84.     Despite Plaintiff-decedent shouting that he had been robbed, losing control of his gun, and writhing on the ground wounded by multiple gunshot wounds, Officer Walls took a step or two closer and, inexplicably and unjustifiably, shot Plaintiff-decedent at least four (4) more times.

85.     When Officer Walls fired these final additional shots, Plaintiff-decedent was neither still shooting at the robbers nor pointing his gun at Officer Walls.

86.     When Officer Walls fired these final additional shots, Plaintiff-decedent did not pose any kind of threat to the fleeing robbers or to Officer Walls.

87.     Although Officer Walls shot Plaintiff-decedent nine (9) times, he discharged his weapon fourteen (14) times, missing on five (5) shots.

88.     Plaintiff-decedent was transported to Albert Einstein Hospital but died approximately a half hour later from multiple gunshot wounds, predominantly to his back but also his arm, elbow, and shoulder.

89.     An autopsy found the manner of death to be a homicide; the Philadelphia Police Report also classified the crime or incident as a homicide.

90.     Officer Walls, who, in 2012, was involved in a prior police shooting and several incidents of alleged misconduct (including gun-related assaults and batteries about which he was sued in this Court), was not interviewed by Internal Affairs until more than a year later.

18

91.    Despite numerous and repeated alerts and warnings of the insidious problems in the Philadelphia Police Department that led to violations of citizens' civil rights, the City of Philadelphia and its leaders failed to create, implement and/or enforce the necessary policies and customs to protect civil rights of the citizenry thereby establishing a custom of violating Philadelphians' civil rights.

92.    This environment, coupled with the misconduct of Officer Walls, led to the tragic and unnecessary killing of Plaintiff-decedent.

93.    Plaintiff now seeks recovery from all Defendants for the catastrophic and fatal injuries, damages, and economic losses suffered by Plaintiff-decedent and his family, as more fully described below, due to the aforementioned excessive and unconstitutional use of force.

## COUNT I - VIOLATION OF 42U.S.C. § 1983
## PLAINTIFF v. DEFENDANTS

94.    Plaintiff incorporates all preceding paragraphs as if set forth more fully herein.

95.    Officer Walls, acting under the color of law at all material times, shot Plaintiff-decedent nine (9) times, most of which were in the back and half of which discharged when Plaintiff-decedent was already writhing on the ground, bullet-ridden and incapacitated.

96.    Consistent with the City's inadequate training and supervision and unconstitutional policies and practices, Officer Walls used deadly force although it was not needed to protect a life or effectuate an arrest under any objectively reasonable standard.

97.    To the extent that any deadly force may have been required initially, Officer Walls continued to use deadly force on a non-threatening Plaintiff-decedent when it was no longer justified.

98.    Officer Walls employed deadly force throughout the shooting incident when lesser means of force could reasonably have been employed or even no force, including Officer

19

Walls taking cover behind his patrol car once Plaintiff-decedent was on the ground rather than aggressively advancing toward Plaintiff-decedent while continuing to shoot his weapon.

99.  Upon information and belief, Officer Walls failed to issue a verbal warning to Plaintiff-decedent, and Officer Walls failed to consider Plaintiff-decedent's statement that he had just been robbed.

100.  Officer Walls used excessive and deadly force violating Plaintiff-decedent's rights under the laws of the Constitution of the United States, such as a citizen's guarantee under the Fourth Amendment and Fourteenth Amendment to be free from an unreasonable seizure of his person and deprivation of his life and liberty, and his rights under the Constitution and laws of the Commonwealth of Pennsylvania.

101.  Defendants' unreasonable, egregious, malicious, willful, and intentional acts and omissions constitute a deliberate indifference and callous disregard for the life, safety, and well-being of Plaintiff-decedent.

102.  As a direct and proximate result of Defendants' unlawful and unconstitutional behavior, Plaintiff-decedent suffered serious bodily harm and death, and Plaintiff-decedent and his family suffered other catastrophic damages as set forth below.

**WHEREFORE,** Plaintiff demands judgment in her favor and against Defendants, jointly and severally, for wrongful death and survival damages, compensatory and punitive damages in an amount in excess of Fifty Thousand Dollars ($50,000.00), plus interest, costs, attorney's fees and such other relief as the Court deems just and proper.

## COUNT II - FAILURE TO TRAIN AND SUPERVISE
## PLAINTIFF v. CITY OF PHILADELPHIA

103.  Plaintiff incorporates all preceding paragraphs as if set forth more fully herein.

20

Case ID: 150402010

104.    The City of Philadelphia and its Police Department failed to properly train and supervise Officer Walls, and failed to such magnitude that it amounted to a deliberate indifference to the rights of persons with whom Officer Walls came into contact, such as Plaintiff-decedent.

105.    The City of Philadelphia failed to train, supervise, educate, instruct and/or control its officers to ensure that force continuums were properly implemented and followed and, in particular, that police shootings were justifiable and not excessive, as repeatedly found by IAO and corroborated by DOJ.

106.    The City of Philadelphia failed to properly and timely investigate incidents of excessive force and discipline offending officers.

107.    The City of Philadelphia failed to create, maintain, disseminate, promulgate, update and enforce written and unwritten policies prohibiting unreasonable, malicious, and excessive use of force against persons by its officers.

108.    The City of Philadelphia knew or should have known that Officer Walls was abusing his authority as a police officer and repeatedly being accused of excessive force, and nonetheless failed to adequately evaluate, correct, monitor, and supervise his performance.

109.    The above referenced failures proximately caused Plaintiff-decedent's death in that they directly and in natural and continuous sequence produced, contributed substantially, or enhanced Plaintiff-decedent's injuries and death.

110.    The aforementioned acts and/or omissions constitute willful and wanton misconduct in disregard of the rights, health, well-being, and safety of Plaintiff-decedent and warrant the imposition of punitive damages.

**WHEREFORE,** Plaintiff demands judgment in her favor and against Defendants, jointly and severally, for wrongful death and survival damages, compensatory and punitive damages in an amount

21

in excess of Fifty Thousand Dollars ($50,000.00) plus interest, costs, attorney's fees and such other relief as this Court deems just and proper.

### COUNT III – *MONELL* POLICY AND PRACTICE CLAIM
### PLAINTIFF v. CITY OF PHILADELPHIA

111.   Plaintiff incorporates all preceding paragraphs as if set forth more fully herein.

112.   As set forth above, the City of Philadelphia historically has had a policy, practice, and/or custom of allowing its police officers to engage in unconstitutional conduct through the use of excessive force, and failing to properly investigate, discipline, and prosecute offending officers.

113.   For decades prior to the killing of Plaintiff-decedent, the Philadelphia Police Department has had a persistent and widespread policy, practice, and/or custom of failing to properly train, enforce, supervise, monitor and discipline the use of deadly, excessive force.

114.   The City of Philadelphia negligently, recklessly, and/or intentionally failed to implement and enforce a policy, practice, and/or custom governing the screening, hiring, discipline, and retention of police officers who have demonstrated a predilection for excessive force or are otherwise unfit to serve.

115.   At all relevant and material times, officials of the City of Philadelphia with authority, including, but not limited to Police Commissioner Charles Ramsey, ratified the unconstitutional actions of the Philadelphia Police Department rendering the policies, practices, lack of effective discipline, lack of proper training, lack of proper supervision and lack of proper enforcement of protocols surrounding the use of deadly force official for liability purposes.

116.   As of May 29, 2013, the City of Philadelphia knew or should have known of its failed policies, practices, and customs and had significant prior opportunity to implement,

22

enforce, and update them to help protect Plaintiff-decedent from serious, fatal, and foreseeable harm.

117.    At all relevant and material times, Officer Walls acted pursuant to a formal government policy or standard operating procedure long accepted within the Philadelphia Police Department such that it amounted to a policy or custom.

118.    The above referenced failures proximately caused Plaintiff-decedent's death in that they directly and in natural and continuous sequence produced, contributed substantially, or enhanced Plaintiff-decedent's injuries and death.

119.    The aforementioned acts and/or omissions constitute willful and wanton misconduct in disregard of the rights, health, well-being, and safety of Plaintiff-decedent and warrant the imposition of punitive damages.

**WHEREFORE,** Plaintiff demands judgment in her favor and against Defendants, jointly and severally, for wrongful death and survival damages, compensatory and punitive damages in an amount in excess of Fifty Thousand Dollars ($50,000.00) plus interest, costs, attorney's fees and such other relief as this Court deems just and proper.

## COUNT IV – ASSAULT AND BATTERY
## PLAINTIFF v. OFFICER WALLS

120.    Plaintiff incorporates all preceding paragraphs as if set forth more fully herein.

121.    Officer Walls engaged in an assault and battery of Plaintiff-decedent when he intentionally shot his gun at Plaintiff-decedent fourteen (14) times, striking him nine (9) times, from close range.

122.    Officer Walls willfully and wantonly shot Plaintiff-decedent excessively and fatally, although Plaintiff-decedent posed no threat to Officer Walls and no longer posed a threat to the fleeing robbers.

23

Case ID: 150402010

123.   Officer Walls unlawfully created an apprehension of immediate physical harm and committed an offensive touching of Plaintiff-decedent.

124.   As a direct result of the aforementioned misconduct, Plaintiff-decedent suffered serious bodily injury and death, a result that was substantially certain to occur.

**WHEREFORE,** Plaintiff demands judgment in her favor and against Defendants, jointly and severally, for wrongful death and survival damages, compensatory and punitive damages in an amount in excess of Fifty Thousand Dollars ($50,000.00) plus interest, costs, attorney's fees, and such other relief as the Court deems just and proper.

## FIRST CAUSE OF ACTION - WRONGFUL DEATH
### PLAINTIFF V. DEFENDANTS

125.   Plaintiff incorporates all preceding paragraphs as if set forth more fully herein.

126.   Plaintiff is the legal representative of the Estate of Kyree Arnold Johnson.

127.   Plaintiff brings this action by virtue of 42 Pa. C.S.A. §8301 and Pennsylvania Rule of Civil Procedure 2202 and claims all benefits of the Wrongful Death Act on behalf of herself and all other persons entitled to recover under the law, including Plaintiff-decedent's minor son Tyhir Johnson.

128.   By reason of Plaintiff-decedent's tragic death, his Administratrix and/or his beneficiaries have suffered pecuniary losses and seek recovery of all medical, funeral, and administration expenses incurred as well as lost support, comfort, society, companionship, guidance, solace, protection and other services Plaintiff-decedent would have provided during his lifetime.

**WHEREFORE,** Plaintiff demands judgment in her favor and against Defendants, jointly and severally, for wrongful death and survival damages, compensatory and punitive damages in

24

Case ID: 150402010

an amount in excess of Fifty Thousand Dollars ($50,000.00), plus interest, costs, attorney's fees, and such other relief as the Court deems just and proper.

## SECOND CAUSE OF ACTION - SURVIVAL ACTION
## PLAINTIFF V. DEFENDANTS

129.    Plaintiff incorporates all preceding paragraphs as if set forth more fully herein.

130.    Plaintiff brings this action on behalf of the Estate of Kyree Arnold Johnson by virtue of 42 Pa. C.S.A. §8302 and claims all benefits of the Survival Act on behalf of herself and all other persons entitled to recover under the law, including Plaintiff-decedent's minor son Tyhir Johnson.

131.    Plaintiff claims on behalf of Plaintiff-decedent all damages suffered, including, but not limited to, significant conscious pain and suffering, catastrophic and fatal physical injuries and mental anguish, great fright, scarring, disfigurement, embarrassment, humiliation, loss of ability to enjoy life's pleasures, as well as the loss of past and future earnings and earning capacity from May 29, 2013 onwards.

**WHEREFORE**, Plaintiff demands judgment in her favor and against Defendants, jointly and severally, for wrongful death and survival damages, compensatory and punitive damages in an amount in excess of Fifty Thousand Dollars ($50,000.00), plus interest, costs, attorney's fees, and such other relief as the Court deems just and proper.

                              **EISENBERG, ROTHWEILER,**
                              **WINKLER, EISENBERG & JECK, PC**


                        By: ___s/Todd A. Schoenhaus_____
                              STEWART J. EISENBERG, ESQUIRE
                              TODD A. SCHOENHAUS, ESQUIRE
                              1634 Spruce Street
                              Philadelphia, PA 19102
                              (215) 546-6636
                              (215) 546-3641 fax
Dated: January 27, 2016       Attorneys for Plaintiff

25

Case ID: 150402010

## VERIFICATION

The undersigned, having read the attached pleading verifies that the within pleading is based on information furnished to counsel, which information has been gathered by counsel in the course of this lawsuit. Signer verifies that he has read the within pleading and that it is true and correct to the best of the signer's knowledge, information and belief. This verification is made subject to the penalties of 18 Pa. C.S. 4904 relating to unsworn falsification to authorities.

Sherry Johnson, Individually and as
Administratrix of the Estate of Kyree
Arnold Johnson, Deceased

DATE: 01-26-2016

Case ID: 150402010

## UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA – DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff:  Sherry Johnson, 612 East Johnson Street, Philadelphia, PA 19138

Address of Defendant:     City of Philadelphia Law Department, 1515 Arch Street, 14th Floor, Philadelphia, PA 19102

Place of Accident, Incident or Transaction:     4257 Wayne Avenue, Philadelphia, PA
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
  ✓ (Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a)).     Yes ☐     No ☒

Does this case involve multidistrict litigation possibilities?     Yes ☐     No ☒
*RELATED CASE IF ANY*:

Case Number: _____ Judge _____     Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1.  Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
      Yes ☐     No ☒

2.  Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
      Yes ☐     No ☒

3.  Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
      Yes ☐     No ☒

CIVIL: (Place   in ONE CATEGORY ONLY)

A. *Federal Question Cases:*                                B. *Diversity Jurisdiction Cases:*

1.  ☐  Indemnity Contract, Marine Contract, and All Other  Contracts      1. ☐  Insurance Contract and Other Contracts
2.  ☐  FELA                                                               2. ☐  Airplane Personal Injury
3.  ☐  Jones Act – Personal Injury                                        3. ☐  Assault, Defamation
4.  ☐  Antitrust                                                          4. ☐  Marine Personal Injury
5.  ☐  Patent                                                             5. ☐  Motor Vehicle personal Injury
6.  ☐  Labor-Management Relations                                         6. ☐  Other Personal Injury (Please specify)
7.  ☒  Civil Rights                                                       7. ☐  Products Liability
8.  ☐  Habeas Corpus                                                      8. ☐  Products liability - Asbestos
9.  ☐  Securities Act(s) Cases                                            9. ☐  All other Diversity Cases
10. ☐  Social Security Review Cases                                             (Please specify)
11. ☐  All Other Federal Questions Cases (Please specify)

## ARBITRATION CERTIFICATION
*(Check appropriate Category)*

I, John Coyle            , counsel of record do hereby certify:

  ☐   Pursuant to Local Rule 53.3 A, civil rights cases are excluded from arbitration.

  ☐  Pursuant to Local Civil  Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

  ☐  Relief other than monetary damages is sought.

DATE:     2/10/2016                                  312084
                        John Coyle, Esquire          Attorney I.D. #
                        Attorney-at-Law

**NOTE**: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE:     2/10/16                                    312084
                        John Coyle, Esquire          Attorney I.D. #
                        Attorney-at-Law

CIV. 609 (4/03)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **Sherry Johnson, Individually and as** <br> **Adminsitratrix of the Estate of Kyree Arnold** <br> Johnson, Deceased <br> 612 East Johnson Street <br> Philadelphia, PA 19138 <br>                     Plaintiff <br><br>       vs, <br><br> **City of Philadelphia** <br> 1515 Arch Street <br> Philadelphia, PA 19102 <br>              and <br> **Andrew Walls** <br> Individually and in his Official Capacity as a City of <br> Philadelphia Police Officer <br> 1515 Arch Street <br> Philadelphia, PA 19102 <br>              Defendant | COURT OF COMMON PLEAS <br> PHILADELPHIA COUNTY <br><br> APRIL TERM, 2015 <br><br><br> JURY TRIAL DEMANDED <br><br> No.: 02010 |

### CASE MANAGEMENT TRACK DESIGNATION FORM

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a)  Habeas Corpus -- Cases brought under 28 U.S.C. §2241through § 2255.    (    )

(b)  Social Security -- Cases requesting review of a decision of the Secretary of Health
     and Human Services denying plaintiff Social Security Benefits.    (    )

(c)  Arbitration -- Cases required to be designated for arbitration under Local Civil Rule 53.2.    (    )

(d)  Asbestos -- Cases involving claims for personal injury or property damage from
     exposure to asbestos.    (    )

(e)  Special Management -- Cases that do not fall into tracks (a) through (d) that are
     commonly referred to as complex and that need special or intense management by
     the court. (See reverse side of this form for a detailed explanation of special
     management cases.)    (    )

(f)  Standard Management -- Cases that do not fall into any one of the other tracks.        ( X )

2/10/16
Date

John Coyle, Esq.

City of ANDREW WALLS
Attorney for

(215) 683-5447

(215) 683-5397

john.coyle@phila.gov

Telephone

FAX Number

E-mail Address